

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4102 | **DATE** | 8/24/2004 |
| **CASE TITLE** | Lody-Rhodes vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the attached Memorandum Opinion and Order, the Court denies the Commissioner's motion for summary judgment (doc. # 28), grants the plaintiff's motion for summary judgment (doc. # 21), and orders the case to be remanded for further proceedings consistent with this opinion.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 26 2004 | 30 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mm | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL LODY-RHODES, on behalf of MITCHELL J. LODY, <br><br> Plaintiffs, <br><br> vs. <br><br> JO ANNE B. BARNHART, Commissioner of Social Security, <br><br> Defendant. | No. 03 C 4102 <br><br> Magistrate Judge Schenkier <br><br> **DOCKETED** <br><br> AUG 2 6 2004 |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Cheryl Lody-Rhodes, on behalf of her son Mitchell J. Lody, seeks judicial review of a final decision denying her application for surviving stepchild benefits, under Title II of the Social Security Act ("Act"), 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment; the plaintiff seeks reversal or remand of the Commissioner's decision (doc. # 21), and the Commissioner seeks judgment affirming her decision (doc. # 28). For the reasons set forth below, the Court denies the Commissioner's motion for summary judgment and grants Ms. Rhodes's request for remand.

### I.

In this appeal, Ms. Cheryl Lody-Rhodes seeks surviving children's benefits on behalf of Mitchell Lody, her son and the stepchild of Mr. Shaine F. Rhodes, her deceased husband (R. 20). The Act provides that surviving children's benefits may be paid to a child of an individual who dies

---

[1] On October 20, 2003, by order of the Executive Committee, and pursuant to 28 U.S.C. § 636(c) and the consent of the parties, this case was assigned to this Court for all purposes, including entry of final judgment (doc. ## 13-15).



while fully or currently insured individual, if the child (1) applies, (2) is under the age of eighteen, (3) is unmarried, and (4) is dependent on the individual who dies. 42 U.S.C. § 402(d)(1)(A)-(C); 20 C.F.R. § 404.350. If the child is applying for benefits as a stepchild, the dependency requirement is satisfied by showing that the stepchild was receiving at least one-half of his or her support from the deceased wage earner, and that he or she was the stepchild for at least 9 months prior to the stepparent's death. 42 U.S.C. § 402(d)(4); 20 C.F.R. § 404.363 & 20 C.F.R. § 404.357.[2] In addition, the child must have been receiving one-half support of 12 months prior to the wage-earner's death. 20 C.F.R. § 404.366. In the appeal before this Court, the only disputed issue regarding eligibility is whether Mr. Rhodes contributed at least one-half of Mitchell Lody's support (Pl.'s Mem. at 6; Def.'s Mem. at 5).

On May 9, 1996, Mitchell Lody was born to Cheryl Lody and Marvin Ginsberg (R. 20, 52). Mr. Ginsberg and Ms. Lody divorced, and on December 6, 1997, Ms. Lody-Rhodes married Shaine Rhodes, and she and Mitchell Lody began living with him. A daughter, Brailyn Rhodes, was born to Mr. Rhodes and Ms. Lody-Rhodes on May 4, 1998 (R.20). Mr. Rhodes committed suicide and died on November 14, 1999 (R. 20, 52).

Following Mr. Rhodes's death, Ms. Lody-Rhodes filed a claim on November 24, 1999 for mother's benefits and for surviving children's benefits on behalf of Brailyn Rhodes, the deceased wage earner's natural daughter, and Mitchell Lody, his stepchild and her son (R. 91). When she filed the initial claim, Ms. Lody-Rhodes listed $26,884.36, the amount of Mr. Rhodes' income, and

---

[2]We note that in 1996, Congress amended the Act by striking "was living with or" from the definition of when a stepchild is dependent. PL 104-121. This amendment is accurately reflected in 42 U.S.C. § 402(b)(4), but not in 20 C.F.R. § 404.363, which still contains the old language. *Ruetter v. Barnhart*, 255 F.Supp.2d 1013, 1016 (D.N.D. 2003), *aff'd in part, vac'd in part by* 372 F.3d 946, 952 (8th Cir. 2004).

$4,496.40 in child support from Mr. Ginsberg as her total income for the preceding 12 months (R. 12, 91). The SSA determined that by aggregating or "pooling" the two income sources ($26,884.36 + 4,496.40 = 31,380.76) the cost of each family member's support was $7,845.19 (31,380.76/4 family members = 7,845.19). According to the SSA's initial determination, the cost of half of Mitchell Lody's support was $3,922.59. By attributing all of Mr. Ginsberg's payments to Mitchell's support (rather than pooling those payments and spreading them across all family members), the SSA found that Mr. Ginsburg's payments exceeded one-half of Mitchell's support ($4,496.40> $3,922.59). Upon finding that Mr. Ginsberg contributed an amount greater than half of Mitchell Lody's support, the SSA concluded that Mr. Rhodes could not have been contributing at least half of the child's support.

On March 2, 2000, Ms. Lody-Rhodes filed a request for reconsideration with the SSA and included, as an additional income source, some $19,600.00 in loans Ms. Lody-Rhodes received from her father in 1999, before Mr. Rhodes's death, which was used primarily to help pay for the family's expenses (R. 91).[3] On reconsideration, the SSA decided to consider the loan when determining the family's total income, but it again denied benefits (*Id.*). The SSA totaled all income sources (*e.g.*, Mr. Rhodes's income of $26,884.36; Mr. Ginsberg's child support of $4,496.40; and $19,600 from the loan from Ms. Lody-Rhodes's father) and concluded that $50,980.76 was the family's total income (*Id.*). The SSA then divided the family's total income by the number of family members, finding that the cost of each member's support was $12,745.19 ($50,980.76/4 family members = $12,745.19) (*Id.*). To determine Mr. Rhodes's contribution to the support of Mitchell Lody, the SSA subtracted the cost of Mr. Rhodes's own support from his income, which reflected the assumption

---

[3]The record indicates that Ms. Lody-Rhodes repaid these loans on October 26, 1999 (R. 91).

that all of Mr. Rhodes's support came from his income alone (and that he therefore would not share in the "pooled" family income). On this basis, the SSA concluded that he had $14,139.17 available for the support of the remaining family members ($26,884.36 - $12,745.19 = $14,139.17) (*Id.*). Finally, the SSA distributed, *pro rata*, the $14,139.17 that Mr. Rhodes had available for support to the remaining three family members, or $4,713.05 each ($14,139,17/3 remaining family members = $4,713.05 (*Id.*). Finding this amount to be less than the $6,372.59 cost of half-support of Mitchell Lody ($12,745.19/2 = $6,372.59), the SSA affirmed the initial determination denying benefits (*Id.*).

Thereafter, Ms. Lody-Rhodes filed a request for hearing with an ALJ and waived her son's right to an oral hearing and legal representation (R. 44-45). The ALJ issued a decision denying benefits on November 29, 2001 (R. 13, 14). The ALJ relied heavily on the reconsideration determination, which in relevant part he characterized as follows: "assuming half of the wage earner's income was reserved for his own support, the Administration prorated the remainder and again concluded that the wage-earner has been providing less than half of the child's support" (R. 13). The ALJ ruled that the inclusion of the loans from Ms. Lody-Rhodes's father were properly considered as income, but the ALJ pointed out that the inclusion served to diminish not only the percentage of Mr. Ginsberg's $4,496.40 child support contribution, but also the contribution of Mr. Rhodes to the support of the claimant (R. 14). Using these findings, the ALJ found that the record did not establish that Mr. Rhodes provided 50 percent or more of Mitchell's support when compared with the amount Mitchell received from his biological father (R. 14). Based on this conclusion, the ALJ ruled that the one half-support requirement was not met (R. 14).

On November 29, 2001, Ms. Lody-Rhodes filed a request for review of the ALJ's decision with the Appeals Council (R. 3). In considering whether to review the ALJ's decision, the Appeals

Council found that the ALJ agreed with the decision of the SSA upon reconsideration and that the ALJ's reliance upon it was appropriate (R. 4). But, the Appeals Council found that the ALJ mistakenly referred to the cost of Mr. Rhodes's support, $12,745.19, as one-half of his income (*Id.*). Reiterating the SSA's reconsideration calculation, the Appeals Council found that because one-third of Mr. Rhodes's remaining income after supporting himself, $4,713.05,[4] was less than the $6,372.59 cost of half-support for Mitchell, Mr. Rhodes was not contributing at least half of Mitchell's support (*Id.*).

In addition, the Appeals Council offered an alternative calculation excluding $5,800.00 from the total household income and using $45,180.76 as the amount of total household income (*Id.*).[5] According to the alternate calculation, the Appeals Council found that $11,295.19 would be the cost of each family member's support,[6] and that this number divided in half would lead to $5,647.59 as the cost of half-support for Mitchell Lody (*Id.*).[7] The Appeals Council then found that one-third of Mr. Rhodes's income after supporting himself, $5,196.36,[8] was less than the $5,647.59 cost of half support for Mitchell Lody, according to the alternate calculation.

---

[4]This number is the amount that the SSA determined was the amount that Mr. Rhodes contributed to Mitchell Lody's support: $26,884.36 (Mr. Rhodes's income) - $12,745.19 (the cost of Mr. Rhodes support) = $14,139.17 (amount available for contribution) $14,139.17/3 remaining family members = $4,713.05.

[5]Although the Appeals Council did not explain the basis for this exclusion, we note that the SSA's reconsideration determination stated that its calculation included a "$5,800.00 bill for plastic surgery" (R. 91).

[6]$45,180.76/4 family members = $11,295.19.

[7]$11,295.19/2 = $5,647.59.

[8]($26,884.26 - $11,295.19 = $15,589.07). The sum of $15,589.07 is the amount of Mr. Rhodes's income available for support of other family members, after taking into account his own support. Distributing that amount to the remaining 3 family members leaves $5,196.36 each. We note that the Appeals Council published a number of $5,196.39. This number was mathematically incorrect, so we have altered it here.

5

## II.

In reviewing the ALJ's decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court's review is limited to determining whether the Commissioner's final decision is support by evidence and based upon the proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). This Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g) (2002), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333. A finding may be supported by substantial evidence even if a reviewing court might reach of a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

Of course, the ALJ is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Moreover, unlike factual findings, the ALJ's conclusions of *law* are not entitled to deference. If an error of law is found, it must be reversed. *Strunk v. Heckler*, 732 F.2d 1357, 1359 (7th Cir. 1984).

In this case, the Court concludes that a remand to the ALJ for more findings is necessary. This conclusion is based on our review of the record and an analysis of the relevant legal guidelines. The basis for this determination is as follows.

6

## III.

The only disputed issue regarding Mitchell Lody's benefits determination is whether he was financially dependent upon his stepfather, Mr. Rhodes, for more than half of his living expenses. Under the Social Security Act, a surviving stepchild is deemed dependent on the deceased wage-earner if the child was receiving "at least one-half of his support from such stepfather or stepmother" 42 U.S.C. § 402(d)(3). In determining whether Mitchell Lody met the one-half support requirement, the Commissioner employed what is known as the "pooled-fund method" for calculating the dependency requirement (R. 4). The SSA's Program and Operations Manual System, hereinafter ("POMS"), explains that the pooled-fund method "is based on the assumption that all income coming into the household is pooled for the support of the household *and that each member shares equally in the funds used for support.*" POMS RS 01301.190(A)(1) (emphasis added).[9]

To determine the cost of each family member's support under the pooled-fund method, the SSA adds up all income coming into the household and divides by the number of people in the household. *See Office of Retirement and Survivors Insurance*, 04-96-ORSI (1996) ("ORSI Policy"). The Commissioner has adopted specific policy guidelines that give step-by-step calculations, and hypotheticals illustrating those calculations, for surviving stepchild claims where, as in the instant case, the family has multiple sources of income. *See* ORSI Policy Section (E). Significantly, POMS cautions that because the pooled-fund method is based in large part on assumptions, it should not be applied where one half-support is missed by a narrow margin. POMS RS 01301.190(A)(2).

---

[9]POMS sets forth "publicly available operating instructions for processing Social Security claims." *Washington St. Dept. of Social and Health Serv's v. Keffeler*, 537 U.S. 371, 385-386 (2003).

After careful review of the calculations adopted and employed in this case by the ALJ and Appeals Council, the Court finds that the ALJ's decision (as modified by the Appeals Council) leaves unanswered serious questions concerning whether the ORSI Policy is consistent with POMS; how the ORSI policy was applied in this case; and whether the pooled-fund method should apply here at all.

### A.

At the threshold, the record does not explain the Commissioner's reasoning in deciding to exclude from Mr. Rhodes's contribution to the family the entire cost of his own support. Although they did not say so, it may be that the ALJ and the Appeals Council simply relied on ORSI Policy Section (4)(c), which provides that "[f]or each member of the household whose income exceeds the cost of support (*e.g.*, the NH and the spouse), the cost of support is subtracted from his/her income. The balance is the amount available for that individual's support of other household members." However, given that the pooled-fund method is based on the assumption that funds are pooled for the entire family and that each member "shares equally in the funds for support," calculating Mr. Rhodes's contribution by first subtracting the cost of his own support would appear to flatly contradict the method of calculation set forth in POMS RS 01301.190, as well as the rationale of the pooled-fund method in general

Put differently, subtracting the entire cost for the wage-earner's support is inconsistent with the original assumption upon which the pooled-fund method rests: that all family members share *equally* in the funds used for support. The Commissioner's calculation method (and ORSI Policy Section E (4)(c)) appear to be based instead on the quite different assumption that the wage-earner applies his income to his own support before providing for the rest of his family, and does not share

in other family income for his support. Indeed, it strikes the Court that the ORSI Policy reflects a selective application of the pooled-fund method, using that method to determine the cost of support (which is total family income divided by total number of family members) but not to determine the funds available to provide support for the wage earners. Thus, the ORSI Policy seems at odds with POMS, at least in the absence of a proper rationale – which neither the ALJ nor the Appeals Council supplied.[10]

Additionally, assuming that the calculation method outlined in ORSI Policy Section E(4) is reasonable and applicable, the application of that calculation and the pooled-fund method may not be proper in this case. Here is why: POMS RS 01301.190 contains a separate cautionary provision indicating that because the pooled fund method is "based to a great extent on assumptions," it should not be applied where the one-half support requirement "is missed by a narrow margin." *Id.* Neither the ALJ nor the Appeals Council addressed this consideration at all, which is a significant omission where one alternative calculation by the Appeals Council (even accepting the total exclusion of Mr. Rhodes's own support from the funds available to support Mitchell) would place the level of support supplied by Mr. Rhodes at 46 percent (Mr. Rhodes's contribution of $5,196.39 divided by Mitchell's cost of support of $11,295.19 (R. 4)).

**B.**

Thus, depending upon how certain variables are input into the relevant calculation, the pooled-fund method may result in a grant or denial of benefits, as well as a determination that the

---

[10]The Court recognizes that although informal policy interpretations, such as the ORSI policy statement, are not entitled to complete deference, they are entitled to respect, to the extent that they persuade. *Alaska Dept. of Environ. Conservation v. E.P.A.*, 124 S.Ct. 983, 1001 (2004). In determining what level of respect to accord a particular informal interpretation, the Court considers the agency's thoroughness of consideration, the validity of its reasoning, the consistency of the interpretation with earlier and later pronouncements, and all those factors which give it the power to persuade. *U.S. v. Mead Corp.*, 533 U.S. 218, 219 (2001).

pooled method does not apply at all because the half-support margin is too narrow. To illustrate this point, we begin by using the information of record to perform a calculation, using ORSI Policy Section E(4), and treating the child support as income to Mitchell and the loan from Ms. Lody Rhodes's father as income to her.

**(4) NH and Spouse Both have Income; Child May or May Not Have Outside Income.**

    a.    Divide the total amount of income by the number of members in the household. This amount constitutes the cost of support for each member. Dividing this amount by 2 equals one-half of each member's support.

$$(\$26,884.36 + \$19,600.00 + \$4,496.40 = \$50,980.76)/4 = \$12,745.19$$
$$\$12,745.19/2 = \$6,372.60$$

    b.    If the cost of the child's income exceeds one-half of the cost of support, the NH could not have been providing at least one-half support. If the child's income is equal to or less than one-half the cost of support, or if the child has no outside income, proceed to the following steps.
*Mitchell Lody's income, if child support is treated as income to him, is less than the cost of half support: $4,496.40< $6,372.60. Therefore, we move on to the following steps.*

    c.    For each member of the household whose income exceeds the cost of support (*e.g.*, the NH and the spouse), the cost of support is subtracted from his/her income. The balance is the amount available for that individual's support of other household members.

*Mr. Rhodes:*        $26,884.36 - $12,745.19 = $14,139.17
*Ms. Lody-Rhodes:*  $19,600.00 - $12,745.19 = $6,854.81

*According to this step, Mr. Rhodes has $14,139.17 available for the support of the other family members and Ms. Lody-Rhodes has $6,854.81 available.*

    d.    To compute the balance of the child's support (which comes from the contributions of the NH and spouse), subtract the child's income from the cost of support.

$$\$12,745.19 - \$4,496.40 = \$8,248.79$$

    e.    Compute the proportion of the NH's contributions to the child as follows:

> Using the amounts arrived at in c. (the NH's and spouse's balance available for support of other household members), add the two figures together. Determine what proportion of the total amount of NH's contribution represents. This fraction is the proportion of the child's support that the NH contributed.
>
> *$14,139.17 + $6,854.81 = $20,993.98*
> *$14,139.17/$20,993.98 = 0.673 = 67%*

f.  Apply the fraction derived in e. to the balance of the child's support (the amount arrived at in d) to determine how much of the balance of support the NH contributed. If the result is equal to or greater than one half the cost of the child's support, the one-half support requirement is met.

*.67 • $8,248.79 = $5,526.69*
*$5,526.69< $6,372.60*
*$5,526.69/$12,745.19 = .43 or 43%*

This calculation uses the program circular guidelines, and the income numbers used by the ALJ and the Appeals Council. The fact that this calculation yields a support number that differs from those expressed in the written decision of the ALJ and Appeals Council is a reflection, at the threshold, of the failure of either decision to build a "logical bridge from the evidence to [the] conclusion" sufficient to allow us to "glimpse into the reasoning" used to reach those decisions. *Zurawski*, 245 F.3d at 887. This failure is particularly significant here, where there are various assumptions that can affect the outcome of the calculation – and thus the decision on eligibility. For illustration purposes, we focus here on one such assumption: that is, whether to treat the child support as income to Mitchell, or income to Mitchell's mother, or as something else.

The Court's calculation set forth above treats the child support payments as income to Mitchell, not to his mother. When the child-support payments are treated instead as the mother's income, the calculation proceeds, as outlined above, until the step in Section E(4)(d). In that step,

the support amount for the child is not reduced by $4,496.40, to yield $8,248.79, but remains fixed at $12,745.19:

> d. To compute the balance of the child's support (which comes from the contributions of the NH and spouse), subtract the child's income from the cost of support.
> OLD CALCULATION: *$12,745.19 - $4,496.40 = $8,248.79*
> REVISED: *$12,745.19 (unreduced by child-support payments).*

This change results in the following calculations in the steps at Section E(4)(e) and (f):

> e. Compute the proportion of the NH's contributions to the child as follows:
>
>> Using the amounts arrived at in c. (the NH's and spouse's balance available for support of other household members), add the two figures together. Determine what proportion of the total amount of NH's contribution represents. This fraction is the proportion of the child's support that the NH contributed.
>
> OLD CALCULATION: *$14,139.17 + 6,854.81 = $20,993.98.*
> REVISED: *$14,139.17 + [$6,854.81(mother's income from loan proceeds) +$4,496.40 (child-support payments) = 11,351.21] = $25,490.38.*
>
> OLD CALCULATION:   *$14,139.17/$20,993.98 = 0.673 = 67%*
> REVISED:           *$14,139.17/25,490.38 =0.554 or 55%*
>
> f. Apply the fraction derived in e. to the balance of the child's support (the amount arrived at in d) to determine how much of the balance of support the NH contributed. If the result is equal to or greater than one half the cost of the child's support, the one-half support requirement is met.
>
> OLD CALCULATION
> *.67 • $8,248.79 = $5,526.69*
> *$5,526.69< $6,372.60 (half cost of pro-rated support of $12,745.19)*
> *$5,526.69/$12,745.19 = .43 or 43% (the half-support requirement is not met)*
>
> REVISED
> *.55 • $12,745.19 (unreduced) = $7,009.85 > 6,372.50 (half cost of pro-rated support of $12,745.19)*
>
> *$7,009.85/12,745.19 = 55% (the half-support requirement is met)*

12

Thus, treating Mr. Ginsberg's child support payments as income to the mother, rather than the child, results in a calculation that supports an award, rather than a denial, of benefits. The ALJ's decision may have treated the child support as neither income to Ms. Lody-Rhodes nor to Mitchell, but simply as income from another source (R. 13-14); the Appeals Council did not disclose how it characterized that payment. Since the characterization of the payment would appear to affect eligibility, it was incumbent on the ALJ to explain why it selected one characterization over others. Neither the ALJ nor the Appeals Council did so here.

### C.

In addition, depending on the assumptions used in performing the ORSI calculation, the question whether Mitchell received at one-half of his support from his deceased step-father appears to be a relatively close one. Under the Appeals Council's calculations, Mitchell received either approximately 37 percent ($4,713.05 of a total support amount $12,745.19) or 46 percent ($5,196.36 out of a total support amount of $11,295.19) of his support from his deceased step father. Under a calculation that treats the child-support as income to Mitchell, he received 43 percent of support from his deceased stepfather (*see* pp.10-11, *supra*); but, treating that child support as income to Ms. Lody-Rhodes, Mitchell received about 55 percent of his support from his stepfather (*id.* at 11-12).

All of this implicates the cautionary statement in POMS RS 01301.190 that the pooled fund method should not apply where the 50 percent support requirement "is missed by a narrow margin." Nowhere in the policy statement or in the ALJ's or Appeals Council opinions is the term "narrow margin" defined. Indeed, there is no indication in the record that the ALJ or the Appeals Council gave any consideration to this regulatory statement, which we do not and cannot construe as meaningless. There is no evidence that the ALJ or Appeals Council considered whether the 50

13

percent support requirement was missed by a narrow margin – although we are hard pressed to understand how the Appeals Council could not consider that point under its alternative calculation, by which Mitchell fell $451.20 short of meeting the 50 percent threshold ($5,647.59 (cost of one-half support) - $5,196.39 (one-third of Rhodes's income after supporting himself) = $451.20).

Nor was there any consideration given, so far as the record reveals, to whether there were circumstances here that suggested the pooled income method should not apply if eligibility was missed by a narrow margin. For example, a large portion of the Lody-Rhodes family income during the twelve months preceding Mr. Rhodes's death appears to be a one-time loan, rather than sustainable source of income to the family. Assuming that loan even should be considered as income to the Lody-Rhodes family (since it was fully repaid during the 12-month period relevant for determining eligibility), a question for the ALJ to reconsider on remand, the fact that so much of the support in 1999 came from a one-time loan should be considered in deciding whether the pooling method should be used here.

## CONCLUSION

For the reasons given above, the Court denies the Commissioner's motion for summary judgment (doc. # 28), grants the plaintiff's motion for summary judgment (doc. # 21), and orders the case to be remanded for further proceedings consistent with this opinion. In particular, on remand the ALJ should consider and specifically address at least the following matters:

1. The appropriate calculation method used to determine eligibility, and the manner in which the calculation is done;

2. The potential inconsistency between the POMS pooled fund method and the ORSI Policy with respect to the deduction of a wage earner's full cost of support from available income to support other family members;

3. The proper characterization of child support payments from Mr. Ginsberg for Mitchell Lody-Rhodes; and

4. If the percentage for half-support misses the 50 percent mark, what constitutes a "narrow margin" under the policy, whether the shortfall is within that narrow margin, and if so, whether the pooled income method should apply.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: August 24, 2004